IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACKIE DIANNA MACK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 1:22-cv-54-RAH |
| | ) |
| COOPERSURGICAL, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

Jackie Dianna Mack and Frankie Mack bring this personal injury action against CooperSurgical, Inc. and Femcare, LTD concerning a contraceptive device ("Filshie Clips") that allegedly migrated and caused injury to Ms. Mack. The Macks plead a variety of state law product liability, negligence, and consumer protection claims. Pending before the Court are summary judgment motions filed by the Defendants. The motions are fully briefed and ripe for decision. For the reasons that follow, they will be granted.

## BACKGROUND

### A.    The Filshie Clip Device

Filshie Clips are silicone-lined titanium medical devices that are permanently attached to the fallopian tubes during a tubal ligation procedure. The clips work by exerting continuous pressure on the fallopian tubes, eventually blocking them and acting as a form of long-term birth control. Filshie Clips are designed to remain permanently attached to the fallopian tubes at their placement location.

Femcare obtained conditional premarket approval ("PMA") from the Food and Drug Administration ("FDA") for the manufacturing and commercial

distribution of Filshie Clips within the United States in 1996 as well as FDA-approved warnings and precautions for Filshie Clips. Those warnings and instructions at the time disclosed the potential adverse effects of clip migration and expulsion and various bodily reactions including pain and cramping. Specific to clip migration or expulsion, the FDA-approved warnings identified a reported adverse effects percentage of 0.13%. (Doc. 90-10 at 6, 8.)

The Filshie Clip PMA has never been suspended or withdrawn by the FDA, and the devices remain on the market today.

**B.     Ms. Mack's Experience with Filshie Clips**

On February 6, 2017, Ms. Mack underwent a tubal ligation procedure using Filshie Clips. (Doc. 91-3 at 16.) The Filshie Clip warnings in use at the time of Ms. Mack's surgery — the September 2016 version — warned about clip migration, expulsion and bodily reactions, including pain and cramping. (Doc. 90-2 at 4; Doc. 90-10 at 6, 8.)

According to Ms. Mack, "within months" of her procedure in 2017, she experienced a variety of adverse symptoms due to the migration of her Filshie Clips. (Doc. 1 at ¶¶ 55, 59.) In her testimony as well as in her communications with her physicians, Ms. Mack placed the date of her injury and the onset of her physical symptoms (severe pain, cramps, and bleeding) due to her Filshie Clips as the spring and summer of 2017. (Doc. 91-2 at 4; Doc. 91-3 at 20; *see also* Doc. 91-2 at 10; Doc. 91-3 at 16.) According to Ms. Mack, by the fall of 2017, she also began incurring damages for lost income due to her "[i]nability to continue working due to Filshie clip related symptoms." (Doc. 91-3 at 20.)

In August 2020, Ms. Mack underwent exploratory surgery where it was discovered that her Filshie Clips had migrated from their original placement. (*Id.* at 16.) As a result, the clips were removed, as was one of her fallopian tubes. (*Id.* at 16-17.) Ms. Mack continued to experience problems and therefore underwent a

complete hysterectomy shortly thereafter.  (*Id.*)

**C.     The Macks' Complaint**

On January 27, 2022, the Macks filed suit.  As described by the Macks, "Filshie Clips have a propensity to come undone and migrate after being placed on the fallopian tubes," and the Defendants "downplayed both the level of migration and severity of injuries that would occur when the Filshie Clips migrate." (Doc. 97 at 4.)  "The migrating clips float[] through a woman's abdominal and pelvic cavity and beyond, wreaking havoc on internal organs along the way. Most women experience severe abdominal and pelvic pain, and the types of symptoms can be vast and the injuries extensive."  (*Id*.)  Despite more recent articles about the higher migration rates and the injuries these products cause and federal reporting regulations, "a vast majority of these adverse reports or scientific articles went unreported by the Defendants. Therefore, women and their medical providers, to this day, do not know the true risks of using these products." (*Id*. at 4-5).  In short, the Macks claim that the migration rate of Filshie Clips is much higher than the published rate of 0.13% and that the complications are worse than disclosed.

In their Complaint, the Macks bring state law claims for: (1) design defect (Count 1); (2) manufacturing defect (Count 2); (3) failure to warn (Count 3); (4) strict liability (Count 4); (5) negligence (Count 5); (6) "violation of consumer protection laws" (Count 6); (7) gross negligence; and (8) punitive damages.[1] In their summary judgment briefing, the Macks consent to summary judgment on their manufacturing defect (*see* doc. 98 at 25) and consumer protection laws (*see* doc. 97

---

[1] The Macks' Complaint appears to be a stock or template complaint used in multiple jurisdictions. For example, Counts 1 through 4 purport to make "product liability" and "strict liability" claims, but nowhere does the Complaint reference the Alabama Extended Manufacturers Liability Doctrine.  In a similar vein, Count 6 purports to make a claim for a "violation of consumer protection laws" without reference or citation to any Alabama consumer protection statute, including the Alabama Deceptive Trade Practices Act.

3

at 7 n.3) claims.

## LEGAL STANDARD

Summary judgment is appropriate where the materials in the record show there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its responsibility, the moving party must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quotation marks omitted).

To prevent summary judgment, a factual dispute must be both material and genuine. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). A fact is "material" if it has the potential of "affect[ing] the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 248). And to raise a "genuine" dispute of material fact sufficient to preclude summary judgment, "the nonmoving party must point to enough evidence that 'a reasonable juror could return a verdict'" in his favor. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is insufficient to defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

The Defendants bring a host of arguments in support of their summary judgment motions, including the statute of limitations, preemption, lack of causation, lack of evidence, the learned intermediary doctrine, failure to state a claim, and technical attacks to various categories of damages. For purposes of the summary

4

judgment motions, the statute of limitations and preemption are dispositive, and therefore the Court dispenses with addressing the other arguments.

A.  **Statute of Limitations**

Invoking Alabama law, the Defendants contend the Macks' claims are time-barred due to Alabama's two-year statute of limitations. Since the Court sits over this case based on diversity jurisdiction, substantive Alabama law applies to the Macks' state law claims. *See Travelers Prop. Cas. Co. of Am. v. Talcon Grp. LLC*, 88 F.4th 1371, 1376 n.4 (11th Cir. 2023).

For tort-based products liability actions like this one, the applicable statute of limitations under Alabama law is two years. Ala. Code § 6-2-38(l); *see Ex parte Integra LifeSciences Corp.*, 271 So. 3d 814, 817-18 (Ala. 2018) ("[A]ctions for any injury to the person or right of another not arising from contract . . . must be brought within two years." (quoting Ala. Code § 6-2-38(l))). "[A] cause of action accrues only when there has occurred a manifest, present injury." *Griffin v. Unocal Corp.*, 990 So. 2d 291, 293 (Ala. 2008) (per curiam) (quotations and emphasis omitted) (adopting *Cline v. Ashland, Inc.*, 970 So. 2d 755, 773 (Ala. 2007) (Harwood, J., dissenting)). An injury is manifest when there are "observable signs or symptoms . . . the existence of which is medically identifiable." *Id.* at 293, 310 (*Cline*, 970 So. 2d 755 dissent adopted). "'Manifest' in this sense does not mean that the injured person must be personally aware of the injury or *must know its cause or origin*." *Id*. at 310 (emphasis added); *see also Utils. Bd. of City of Opp v. Shuler Bros., Inc.,* 138 So. 2d 287, 293 (Ala. 2013). Instead, "[a] cause of action accrues at the time the complained-of action first gives rise to injury, even if the full extent of the injury is not apparent at the time." *Martin v. Cash Express, Inc*., 60 So. 3d 236, 248 (Ala. 2010) (quoting *Van Hoof v. Van Hoof*, 997 So. 2d 278, 296 (Ala. 2007)); *McWilliams v. Union Pacific Res. Co*., 569 So. 2d 702, 703 (Ala. 1990) ("The very basic and long settled rule of construction of our courts is that a statute of limitations

begins to run in favor of the party liable from the time the cause of action 'accrues.' The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon." (quotations omitted)). It begins to run "whether or not the full amount of damages is apparent at the time of the first legal injury." *McWilliams*, 569 So. 2d at 703 (quotations omitted).

In the medical device context, courts have held that a cause of action accrues when the device fails and injures the patient. *See, e.g., Collins v. Davol, Inc.,* 56 F. Supp. 3d 1222, 1229 (N.D. Ala. 2014) ("[U]nder Alabama law, a tort cause of action stemming from a defective medical device accrues when the medical device fails and injures the recipient of the device."); *Ex parte Integra LifeSciences Corp.*, 271 So. 3d 814, 817-18 (Ala. 2018); *Smith v. Medtronic*, 607 So. 2d 156, 159 (Ala. 1992); *Coleman v. Bos. Sci. Corp.*, No. 1:17-CV-439-TFM-C, 2020 WL 7090701, at *5, 7 (S.D. Ala. Sept. 22, 2020).

"[P]laintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, [does not] postpone the running of the statute until the tort or injury is discovered." *McWilliams*, 569 So. 2d at 704 (quotations omitted); *Chaney v. Ala West-AL LLC*, 22 So. 3d 488, 496-97 (Ala. 2008). In other words, the limitations period is not tolled until a plaintiff discovers the cause of action. *See Spain v. Brown & Williamson Tobacco Corp.,* 230 F.3d 1300, 1305-06 (11th Cir. 2000).

Here, there is no dispute that Ms. Mack's Filshie Clips were implanted in February 2017 and that, within months, she began experiencing complications — and therefore injury — from her Filshie Clips, including severe pain, cramps and bleeding. Since she did not file this lawsuit until January 27, 2022, under straight-up accrual principles based on the date of injury, the Macks' claims appear to be time-barred. *See Coleman*, 2020 WL 7090701, at *7; *Collins*, 56 F. Supp. 3d at 1229. But there are exceptions, according to the Macks.

The Macks first argue that the statute of limitations was tolled until 2020 when Ms. Mack underwent exploratory surgery that revealed not only the presence of Filshie Clips but also their migration. (Doc. 97 at 7-10.) Until that point, according to the Macks, they had no reason to suspect that Filshie Clips were the source of Ms. Mack's problems because the Defendants had concealed the true migration rates and complications of Filshie Clips from the FDA, Ms. Mack, her physicians, and the general public. (*Id.*)

True, Alabama's discovery rule "applies . . . [to] cases involving the fraudulent concealment of the existence of a cause of action." *Utils. Bd. of City of Opp*, 138 So. 3d at 293. In other words, the discovery rule has been extended to "other torts not arising in fraud . . . ." *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010) (quotations omitted). Under the rule, if a plaintiff can prove that a defendant fraudulently concealed her cause of action—whatever that action may be—then she has two years from the discovery of her cause of action to file a lawsuit. *Id.* at 224-25.

But to fall within the discovery rule, the "complaint must allege the time and circumstances of the discovery of the cause of action." *Id.* at 226. "The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *Id.* "[G]eneralized allegations that a defendant had concealed a cause of action, unsupported by specific facts concerning that concealment or the plaintiffs' discovery of that concealment, [are] insufficient to toll the statute of limitations under § 6-2-3."[2] *McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617, 623 (Ala. 2019) (rejecting argument for fraud-based tolling in a products liability case); *see also Smith v. Nat'l Sec. Ins. Co.,* 860 So. 2d 343, 345, 347 (Ala.

---

[2] The Macks did not make this particularized showing in the Complaint.

2003) (rejecting fraud-based tolling); *Lowe v. East End Mem'l Hosp. & Health Ctrs*., 477 So. 2d 339, 341-42 (Ala. 1985) (same); *Miller v. Mobile Cnty., Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981) (same).

The Macks' claims and fraudulent concealment theory are tested, not merely by allegations contained in the Complaint, but by actual evidence, as the Macks bear the burden of proof. *See First Ala. Bank of Montgomery, N.A. v. First State Ins. Co., Inc*., 899 F.2d 1045, 1054 (11th Cir. 1990) ("A party seeking to rely on § 6-2-3 to toll the statute of limitations has the burden of proving fraudulent concealment."). As such, the Macks can no longer travel simply upon a bare allegation of a mere failure to warn that forms the basis of their substantive product liability claims against the Defendants. "[A] mere failure to warn or refusal to warn, without more, while actionable, does not rise to the level of fraudulent concealment that tolls the statute of limitations." *Scharff v. Wyeth*, Case No. 2:10-cv-220-WKW, 2011 WL 3320501, at *11 (M.D. Ala. Aug. 2, 2011) (alterations omitted) (quoting *Cazales v. Johns-Manville Sales Corp*., 435 So. 2d 55, 58 (Ala. 1983)).

The Macks argue the Defendants bear a statutory duty under FDA regulations to forward reports of all reported adverse events concerning Filshie Clips to the FDA, that the Defendants breached that duty when they failed to disclose to the FDA the "myriad of adverse event reports from women who were purportedly injured by migrating Filshie Clips," and that this "failure to disclose prevented [the Macks] from being able to file [their] claims earlier." (Doc. 97 at 9.) Therefore, according to the Macks, they and their physicians were unable to make a fully informed medical decision, nor were they able to make a connection between Ms. Mack's pain, cramps, and bleeding to Filshie Clip migration, which delayed the Macks' ability to file a lawsuit. (*Id.* at 8-10.)

But these allegations form the basis of the Macks' failure to warn claims (*see* Counts 3, 4, 5 and 7) themselves. Without more, these allegations, even if true or

8

viewed in the light most favorable to the Macks, cannot form the basis of a fraudulent concealment theory for statute of limitations purposes. Again, fraudulent concealment requires an act "above and beyond the wrongdoing upon which the plaintiff's claim is founded to keep a plaintiff from suing in time." *Fedance v. Harris*, 1 F.4th 1278, 1286 (11th Cir. 2021) (quotations omitted); *see also Scharff*, 2011 WL 3320501, at *11 ("[A] breach of the duty to warn by a manufacturer does not toll the statute of limitations under Alabama law, because a mere failure or refusal to warn, without more, while actionable, does not rise to the level of fraudulent concealment that tolls the statute of limitations." (quotations and brackets omitted)). And further, the Macks fail to present sufficient evidence showing, even in a light favorable to them, that the Defendants fraudulently concealed their causes of action from them, or that the Defendants purposely prevented them from pursuing their claims, or that the Macks would not have discovered their causes of action absent the Defendants' fraud, or that their physicians would have done something differently that would have put the Macks on notice of their claims. As such, the Macks' fraudulent concealment theory fails.

Lodging the same basic factual assertions, the Macks also invoke the doctrine of equitable tolling. Although scant on discussion, the Macks apparently claim there were extraordinary circumstances that prevented the filing of this lawsuit and that while Ms. Mack diligently sought medical help when she experienced complications from her Filshie Clips, neither she nor her physicians could make any connection "because Defendants hid the fact that Filshie Clips had [a] propensity to migrate." (Doc. 97 at 12.) Those claimed "extraordinary circumstances" appear to be the same ones constituting the basis of the Macks' fraudulent concealment theory.

In addition to being thin in argument, their assertion is also thin in evidence. The Macks fail to provide sufficient evidence of diligence in pursuing their rights or evidence of defendant-misconduct that "induced or tricked" them into allowing the

9

statute of limitations to expire. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *see also Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) ("A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action." (brackets and quotations omitted)). The Macks show no "extraordinary circumstance" that impeded their ability to file this action. *Weaver*, 155 So. 3d at 957. Therefore, like with the fraudulent concealment theory, the equitable tolling theory fails also.

Under Alabama law, a cause of action accrues when the first legal injury occurs – which, in this case, was mid-2017 at the latest. Thus, the two-year limitations period expired at least by mid-2019, nearly three years before the Macks filed their initial Complaint. The Macks' claims – all of them, regardless of theory – are time-barred.[3]

**B.     Preemption**

In addition to being time-barred, the Defendants also claim that all the Macks' claims are preempted.[4] The Court agrees.

Prior to being sold or distributed in the United States, Filshie Clips underwent the FDA's premarket approval process, which is governed by the Medical Device Amendments ("MDA"), *see* 21 U.S.C. § 360c *et seq.*, to the Federal Drug and Cosmetic Act ("FDCA"), *see* 21 U.S.C. § 301 *et seq.* As relevant here, the MDA contains both an express preemption provision, *see* 21 U.S.C. § 360k, and an implied preemption provision, *see* 21 U.S.C. § 337.

---

[3] To the extent the Macks move for summary judgment regarding the statute of limitation, their motion (doc. 87 at 5) is due to be denied.

[4] To the extent the Macks move for summary judgment regarding preemption, their motion (doc. 87 at 2-3) is due to be denied.

The express preemption provision "does not allow a state to impose a requirement on a [medical device that has gone through the premarket approval process] that is 'different from, or in addition to' any federal requirement on the device." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1325 (11th Cir. 2017) (quoting 21 U.S.C. § 360k(a)). However, a "plaintiff's state common law claims . . . [are] not preempted to the extent their claims parallel[] federal requirements." *Id.* at 1326.

The implied preemption provision states, in relevant part: "[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). This provision has been applied to so-called "fraud-on-the-FDA claims"—where the manufacturer makes misrepresentations or non-disclosures to the FDA. *Mink*, 860 F.3d at 1327 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) (holding fraud-on-the-FDA claims are impliedly preempted because they "exist solely by virtue of the [Food, Drug, and Cosmetic Act's] disclosure requirements")). In sum, "traditional state-law tort claims survive implied preemption so long as they don't seek to privately enforce a duty owed to the FDA." *Id.*; *see also Jacob v. Mentor Worldwide, LLC*, 860 F.3d 1319, 1336 (11th Cir. 2022) ("Put another way: a plaintiff cannot seek to privately enforce a duty that is owed to the FDA."). "So, even if a plaintiff's claim is not expressly preempted, it is impliedly preempted if it is cognizable only because of duties owed to the FDA." *Jacob*, 40 F.4th at 1336.

These express and implied preemption provisions, operating in tandem, have created what some federal courts have described as a "narrow gap." *Id.* (quoting *Mink*, 860 F.3d at 1327 (11th Cir. 2017)). To make it through, "a plaintiff has to sue for conduct that violates a federal requirement (avoiding express preemption) but cannot sue only because the conduct violated that federal requirement (avoiding implied preemption)." *Id.* (quoting *Mink*, 860 F.3d at 1327)).

11

While the Macks have several remaining claims—products liability (Counts 1, 2, and 3), strict liability (Count 4), negligence (Count 5), and gross negligence (Count 7)—all of those claims stem from the same two basic theories of liability—failure to warn and design defect. The preemption analysis for each theory of liability applies equally to each claim, so the Court will address these claims based on each theory together.

   1.   **Failure to Warn**

The Macks do not argue and have not provided any evidence that the Defendants ever deviated from the FDA-approved warnings and instructions concerning Filshie Clips. In fact, their experts are quick to acknowledge that. (*See* Doc. 90-15 at 5 (Wheeler, stating that he is unaware of any deviations from approved warnings or labels); Doc. 90-16 at 4 (Rosenzweig, same); Doc. 90-17 at 6 (Harris, stating that she has no opinions regarding Defendants' compliance or noncompliance with FDA rules and regulations).)

While they do not affirmatively claim in their Complaint that the Defendants should have used more or different language in their FDA-approved warnings and instructions than those previously approved by the FDA, in their summary judgment briefing, they do seem to suggest that the Defendants should have. For example, in arguing for application of fraudulent concealment and equitable tolling in opposing the Defendants' statute of limitations assertions, the Macks repeatedly emphasize the Defendants' alleged suppression of information (for example, that labeling should reflect a reported 25% migration rate and not a 0.13% rate) from physicians and the general public in the Instructions for Use that accompanied their Filshie Clip product in 2017. (*See* Doc. 97 at 10.) This argument demonstrates that the Macks are indeed making state law claims based on a fraud-on-the-FDA theory and that Defendants' warnings and labeling should have been different, i.e., reflecting different migration statistics and complications. Such claims clearly are preempted.

12

21 U.S.C. § 360k(a); *see Froman v. CooperSurgical, Inc.*, No. 2:22-cv-00110-AKK, 2022 WL 2657117, at *6 (N.D. Ala. July 8, 2022) ("[T]he Court in *Buckman* was explicit in holding that a plaintiff's claims are preempted where they are based on the theory that a defendant caused her injuries by failing to make accurate representations to the FDA.").

The Macks further claim that the Defendants failed to report to the FDA, the Macks, and the medical community "the hundreds of adverse events reports they received from patients and medical professionals of instances where the migrating Filshie Clips caused great bodily harm and persistent pain that affected the patient's ability to work and live normal lives." (Doc. 98 at 13; *see also* Doc. 97 at 9, 11.) As it concerns any duty to report, while the Macks argue there is a duty of "reasonable diligence," they point to no Alabama law that parallels the federal requirement to report adverse events to the FDA nor to any federal law that requires reporting of adverse events to the Macks or the medical community. Therefore, such an assertion here under the Macks' state law theories would impose requirements on the Defendants that are different from or in addition to the requirements imposed by the FDA. *See Wilhite ex rel. Wilder v. Medtronic, Inc.*, No. 2:23-cv-00423-SGC, 2024 WL 968867, at *4 (N.D. Ala. Mar. 6, 2024); *McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1199-1200 (M.D. Fla. 2013); *Byrnes*, 60 F. Supp. 3d at 1297; *Grubbs v. Medtronic, Inc.*, No. 18-cv-01468-AKK, 2019 WL 3288263, at *3 (N.D. Ala. July 22, 2019). As such, they are preempted.

This "failure to report" theory of liability recently was addressed by the Eleventh Circuit in *Mink*. *Mink*, 860 F.3d at 1330. There, "Mr. Mink's theory relie[d] on his allegation that [the medical device manufacturer] failed to adequately investigate adverse events and complaints and failed to properly report these issues to the FDA." *Id*. (quotations omitted). The Eleventh Circuit held that this theory was impliedly preempted, stating: "Because this theory of liability is based on a duty

13

to file a report with the FDA, it is very much like the 'fraud-on-the FDA' claim the Supreme Court held was impliedly preempted in *Buckman*." *Id.*; *see also Godelia v. Doe 1*, 881 F.3d 1309, 1320 (11th Cir. 2018) (explaining that plaintiff's "claims would have been impliedly preempted if he [asked] the court to find [the defendant] liable based solely on a failure to report to the FDA," but plaintiff instead claimed defendants were liable under state tort law based on a manufacturing defect); *Wilhite*, 2024 WL 968867, at *5 (explaining that because plaintiff claimed the defendant violated state tort law through failure to report to the FDA and plaintiff sought to "enforce a duty [only] owed . . . to the FDA," the MDA preempted her claims).

The Macks do not attempt to distinguish *Mink*, other than to say that the Court previously refused to dismiss their claims under *Mink* at the motion to dismiss stage. (Doc. 98 at 10.) Like they did in their opposition to the Defendants' motion to dismiss, they argue that their Complaint was "carefully drafted" to stay within the bounds of the MDA. (*Id.* at 12.) Despite how they couch it, their claims are now subject to an evidentiary standard, not self-described careful drafting. As such, the Macks must actually present evidence that their failure to warn claims consist of more than a failure to report adverse events to the FDA. Here, they have failed to do so.

Under the clear authority of *Mink* and *Buckman* and because the Macks have not provided sufficient evidence supporting a failure to warn claim beyond the Defendants' alleged failure to report adverse events to the FDA, those claims are impliedly preempted. Defendants are entitled to summary judgment as to all of the Macks' failure to warn claims.

  **2.**  **Design Defect Claims**

As to the Macks' design defect theories of liability, the Macks do not provide evidence of any failure by the Defendants to adhere to the FDA-approved design of

14

Filshie Clips. Their experts (Wheeler, Rosenzweig and Harris) acknowledge as much. (*See* Doc. 90-15 at 5; Doc. 90-16 at 3; Doc. 90-17 at 3.) But if they did make such a claim, that claim would be expressly preempted since their claim would be premised upon a design different from that approved by the FDA. *See* 21 U.S.C. § 360k(a); *see also Wilhite*, 2024 WL 968867, at *4 (noting that design claims premised upon a design different from that approved by the FDA are preempted). On this basis, summary judgment is due to be granted.

But further, it appears that the Macks' design defect claims are premised upon the theory that the Defendants failed to make adequate disclosures to the FDA of adverse event reports about migration and complications. These claims focus on the Defendants' alleged failure to disclose adverse events to the FDA both before and after premarket approval.[5] And again, this is the type of fraud-on-the-FDA claim that the Supreme Court determined was preempted in *Buckman*. 531 U.S. at 343–44 (holding that the plaintiffs' claims were impliedly preempted where they asserted that the defendants "made fraudulent representations to the [FDA] in the course of obtaining approval to market the [devices]" and had "the representations not been made, the FDA would not have approved the devices, and plaintiffs would not have been injured"). The failure to report adverse events theory is simply the failure to warn claim repackaged as a design defect claim. As such, *Mink* and *Buckman* apply and therefore, the Macks' claims based on their design defect theory are also preempted.

---

[5] While acknowledging that they must show a safer, practical, alternative design was available to the Defendants at the time they manufactured Filshie Clips (*see* doc. 98 at 24), the Macks fail to proffer one. Instead, they only offer alternative methods of tubal ligation. (*Id.* at 25.) That is not the type of evidence needed to show that a safer, practical, alternative design was available to the Defendants.

15

## CONCLUSION

For the reasons discussed, the Macks' claims are time barred, and even if not, preempted.

Accordingly, it is **ORDERED** as follows:

(1) Defendant Femcare LTD's Motion for Summary Judgment (Doc. 90) is GRANTED;

(2) Defendant CooperSurgical, Inc.'s Motion for Summary Judgment (Doc. 91) is GRANTED;

(3) Plaintiffs' Motion and Request to Use a Juror Questionnaire (Doc. 86) is DENIED as moot;

(4) Plaintiffs' Motion for Summary Judgment on Defendants' Affirmative Defenses (Doc. 87), to the extent it is based on preemption and the statute of limitations, is DENIED; in all other respects, it is DENIED as moot;

(5) Plaintiffs' Motion to Limit Certain Opinions Offered by Defendants' Expert Witness Dr. Jonathan Jarow, M.D. (Doc. 88) is DENIED as moot;

(6) Plaintiffs' Motion to Limit Certain Opinions Offered by Defendants' Expert Witness Dr. Glenn Gallaspy, III (Doc. 89) is DENIED as moot;

(7) Defendants' Motion to Exclude Opinions of Lisa Harris, M.D. (Doc. 92) is DENIED as moot;

(8) Defendants' Motion to Exclude Opinions of Bruce Rosenzweig, M.D. (Doc. 93) is DENIED as moot;

(9) Defendants' Motion to Exclude Opinions of Joshua Sharlin, M.D. (Doc. 94) is DENIED as moot;

(10) Defendants' Motion to Exclude Opinions of James Wheeler, M.D. (Doc. 95) is DENIED as moot;

(11) Defendants' Motion to Continue Trial Date and Pretrial Deadlines (Doc. 120) is DENIED as moot; and,

(12) Defendants' Amended Motion to Continue Trial Date and Pretrial Deadlines (Opposed) (Doc. 121) is DENIED as moot.

**DONE**, on this the 4th day of October, 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE